**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **LO'RE PINK a/k/a**<br>**JOHNNY L. HARDEMAN,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**STEVEN HARPE, et al.,**<br><br>**Defendants.** | **Case No. 24-CV-393-JFH-JAR** |

**OPINION AND ORDER**

Plaintiff Lo'Re Pink a/k/a Johnny L. Hardeman ("Plaintiff"), a state prisoner appearing *pro se* and proceeding *in forma pauperis*, brings this federal civil rights action pursuant to 42 U.S.C. § 1983. Dkt. No. 1. Before the Court is the Motion to Dismiss submitted by Defendants Oklahoma Department of Corrections ("ODOC"), Steven Harpe, Elizabeth Schluter, Carl Bear, Amber Robinson, Justin Farris, Tommy Sharp, Jason Bryant, Mark Knutson, Petra Chumley, Travis Gray, Sherri Mooney, Susan Gardner, Nanci Battles, and Dana Webb ("Defendants").[1] Dkt. No. 59. Plaintiff has responded in opposition to the motion [Dkt. Nos. 62, 63],[2] and Defendants have

---

[1] Defendants Christie Quick, R. Gulbert, and Creighton White have not moved for dismissal. *See* Dkt. No. 59, at 1 n.2. Because Plaintiff proceeds *in forma pauperis*, however, the Court has considered whether dismissal of these three defendants is appropriate under 28 U.S.C. § 1915(e)(2)(B).

[2] Though Plaintiff's submissions are styled "Declaration of Disputed Facts" [Dkt. No. 62] and "Motion and Stat[e]ment of Disputed Facts" [Dkt. No. 63], it is clear from the substance of the documents that the filings are responses to Defendants' Motion to Dismiss. Plaintiff does not request relief other than that Defendants' Motion to Dismiss be denied. *See* Dkt. No. 63 at 53 (Plaintiff stating that there "are material facts in dispute" and that "summary judgment should be denied"). Further, Defendants properly construed the second filing as a Response to their Motion to Dismiss and submitted a Reply responding to the document. Dkt. No. 65 at 1 (Defendants stating Plaintiff "is clearly responding to Defendants' Motion to Dismiss"). Accordingly, the Court construes Plaintiff's "Declaration of Disputed Facts" and "Motion and Stat[e]ment of Disputed Facts" as responses to Defendants' Motion to Dismiss. Further, though the Motion to

replied [Dkt. No. 65]. For the reasons discussed herein, the Court GRANTS Defendants' Motion.

## LEGAL STANDARD

Defendants have moved to dismiss the action primarily under 12(b)(6) of the Federal Rules of Civil Procedure. To survive a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The litigant must plead factual content that "allows the court to draw the reasonable inference" of the defendant's liability. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557). Further, in the context of § 1983 cases, where defendants "often include the government agency and a number of government actors sued in their individual capacities," it is "particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (emphases in original).

In assessing a motion to dismiss, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal quotation marks omitted).

---

Dismiss and Plaintiff's Response invite the Court to consider materials outside of the Complaint, consideration of those materials would require the Court to convert the Motion to Dismiss into a motion for summary judgment, which the Court declines to do. *See* Fed. R. Civ. P. 12(d).

However, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). While the Court construes a pro se litigant's pleadings liberally, this liberal construction "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.* The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997).[3]

**DISCUSSION**

Plaintiff alleges that her constitutional and state rights were violated in relation to: (1) her transfer in June 2022 from a "medium security facility to the supermax area" of the Oklahoma State Penitentiary ("OSP"); (2) her "long-term (indefinite) special management classification status" at OSP; (3) the denial of her requests to be transferred out of the supermax area or facility; and (4) the denial of a physician's order regarding placement of handcuffs.[4] Plaintiff sues eighteen defendants and seeks compensatory and punitive damages. Dkt. No. 1 at 1, 9-10, 30-36, 39. Plaintiff sues Defendants Steven Harpe, Nanci Battles, Dana Webb, and Christie Quick in both their individual and official capacities and all other Defendants solely in their individual capacities.

---

[3] Plaintiff's Complaint is difficult to decipher. It consists of 39 handwritten pages, names eighteen defendants, and presents voluminous allegations in a disjointed and repetitive manner. Plaintiff often cites multiple constitutional provisions and state-law claims indiscriminately, and the defendants referenced in certain allegations differ from those listed in the corresponding requests for relief. It is the Plaintiff's responsibility to provide a short and plain statement of her claims for relief and to assert each allegation in a "simple, concise, and direct" manner. Fed. R. Civ. P. 8(a), (d). The Court has construed Plaintiff's Complaint liberally but will accept as true only those "well-pleaded allegations" that are not conclusory, and the Court will not construct legal theories on Plaintiff's behalf that were not adequately raised or for which no relief was requested. *See Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007).

[4] Plaintiff identifies as female, so the Court has used female pronouns. *See Hardeman v. Smith*, 764 F. App'x 658, 659 n.1 (10th Cir. 2019).

*Id.* at 1, 9-10, 36.

## I. Plaintiff's Retaliation Claims

Plaintiff alleges that on June 8, 2022, while housed at a medium security facility, she was summoned to Defendant White's office to give a statement regarding an incident of lewd conduct by another inmate that occurred in front of her and a female guard. Dkt. No. 1 at 11. Despite expressing concern about retaliation from inmates if forced to participate in an investigation that might "turn[] into a 'Prison Rape Elimination Act' (PREA) [investigation]," Defendant White required that she make a statement. *Id.* Plaintiff alleges she was unexpectedly transferred "to the supermax area" of OSP the next day and that Defendants Sparks, White, Bears, and Farris were responsible for the transfer. *Id.* at 26. She contends the transfer was an act of retaliation. *Id.* at 26, 30-31. Additionally, Plaintiff alleges that, once at OSP, Defendants Farris, Gray, Gulbert, Sparks, Bryant, Bears, and Sharp denied her packets seeking transfer out of the supermax unit and that the denials were retaliatory in nature. *Id.* at 18-19, 29, 33-35.[5]

To succeed on a retaliation claim, a plaintiff must show: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). "[T]emporal proximity between the protected [activity] and the alleged retaliatory conduct, without more, does not allow for an inference of a retaliatory motive." *Trant v. Oklahoma*, 754 F.3d 1158, 1170 (10th Cir. 2014); *cf. Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th

---

[5] In her request for relief regarding this claim, Plaintiff references Defendants Farris, Gray, Gulbert, Sparks, Bryant, Bears, and Sharp. *Id.* at 33-35. The named defendants vary as to this claim, however, elsewhere in the Complaint. *See id.* at 18, 29.

Cir. 2010) (finding retaliatory motive had been sufficiently pled where the plaintiff alleged not only close temporal proximity between the filing of a grievance and the plaintiff's transfer to an out-of-state supermax prison, but also that "Defendants were aware of his [grievance], [and] that his [grievance] complained of Defendants' actions").

**a. *Claim Relating to June 9, 2022, Transfer***

Even if the Court assumes the first two elements of a retaliation claim are met as to Plaintiff's initial transfer to OSP, Plaintiff has not plausibly alleged that her transfer was "substantially motivated as a response" to her statement regarding the lewd conduct of another inmate. Plaintiff provides no facts explaining why Plaintiff's cooperation with Defendant White in providing a statement regarding the lewd conduct of another inmate would motivate Defendant White, Sparks, Bears, or Farris to retaliate. Plaintiff, in fact, provides no facts supporting her supposition that Defendants Sparks, Bears, and Farris were even aware of Plaintiff's statement. Rather, Plaintiff's theory is supported only by the temporal proximity between the statement and the transfer, and "temporal proximity—without more—falls short of the necessary showing for retaliatory motive." *Smith v. Albany Cnty. Sch. Dist. No. 1 Bd. of Trustees*, 174 F.4th 1235, 1246-47 (10th Cir. 2026) (internal quotation marks omitted). Nor do the alleged facts plausibly support an inference that Plaintiff's statement against the other inmate was "a 'but-for' cause" of the transfer. *Id.* (explaining that "a finding that protected activity was a contributing factor falls short of [the] requirement that it be the 'but-for' cause").

Further, Plaintiff provides only collective allegations against the defendants, rather than explaining the distinct actions taken by each. Accordingly, Plaintiff has not plausibly alleged their personal participation in a constitutional violation.

**b. *Claim Relating to Denial of Transfer Requests***

As for Plaintiff's assertion that the denials of her transfer packets were acts of retaliation, Plaintiff does not clearly allege a predicate constitutionally protected activity or provide facts from which the inference could be drawn that the denials were substantially motivated as a response to Plaintiff's exercise of constitutionally protected conduct. Additionally, Plaintiff fails to differentiate the conduct of Defendants Farris, Gray, Gulbert, Sparks, Bryant, Bears, and Sharp such that they might have fair notice of the claim against them. Because Plaintiff has not provided sufficient facts to render her theory plausible, this retaliation claim likewise fails.

For these reasons, the Court finds that Plaintiff has not stated plausible retaliation claims against Defendants Sparks, White, Bears, and Farris in relation to her June 9, 2022, transfer or against Defendants Farris, Gray, Gulbert, Sparks, Bryant, Bears and Sharp in relation to the denial of her transfer packets.

## II. <u>Plaintiff's Due Process Claims</u>

Plaintiff alleges her due process rights were violated in relation to her initial transfer to OSP, her classification while at OSP, and the denials of her requests for transfer out of the supermax unit. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted). For inmates in state prisons, "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Id.* at 221. Nor do state policies or regulations "create the basis for a liberty interest in the conditions of confinement so long as they do not 'impose[] atypical and significant hardship

on the inmate in relation to the ordinary incidents of prison life.'" *Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1339 (10th Cir. 2007) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *see Elliott v. Martinez*, 675 F.3d 1241, 1245 (10th Cir. 2012) ("The Due Process Clause imposes no procedural constraints on a prison official in ordering special conditions of confinement unless the official 'imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life.'" (quoting *Sandin*, 515 U.S. at 484). The Court need not determine whether Plaintiff has plausibly alleged conditions imposing "atypical and significant hardship," as her claims fail even if the Court assumes the alleged conditions implicate her Fourteenth Amendment rights.[6]

**a. *Claims Relating to June 9, 2022, Transfer***

Plaintiff alleges that Defendants Sparks, White, Bears, and Farris "arbitrarily [had her] shipped to the Supermax area of the state prison" "without notice or hearing." Dkt. No. 1 at 26, 30-31. Plaintiff contends her first "supermax segregation hearing" took place on July 27, 2022. *Id.* at 11. Plaintiff fails, however, to plausibly allege their personal participation or that of any other defendant. To succeed on an individual liability claim in a § 1983 action, a plaintiff must provide more than conclusory allegations. He must provide sufficient facts to demonstrate "plausible, rather than merely possible, entitlement to relief" and must provide sufficient facts to demonstrate the defendant's personal participation in the alleged constitutional violation. *Twombly*, 550 U.S. at 570. Here, Plaintiff has provided no facts regarding the respective roles

---

[6] Plaintiff alleges she endured harsh conditions in the supermax unit. *See* Dkt. No. 1 at 11, 13-14, 20. Plaintiff additionally has sought leave to "add [a] sworn affidavit to [her] Complaint" to support a showing of atypical hardship. Dkt. No. 79. Because the Court finds Plaintiff's claims lack merit regardless of whether she endured such conditions, the Court denies the motion as futile. The Court additionally denies the motion due to undue delay. Plaintiff waited over a year after Defendants filed their Motion to Dismiss and provides no explanation for the delay. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204-05 (10th Cir. 2006).

Defendants Sparks, White, Bears, and Farris played in her transfer, how their conduct deviated from policy, or what knowledge they possessed regarding the transfer. Plaintiff's conclusory statement that they participated in her transfer is too vague to support an actionable constitutional claim against them.

**b. *Claims Relating to Plaintiff's Classification at OSP***

Plaintiff next seeks relief against Defendants Chumley, Schluter, Gardner, Mooney, and Battles for "being the unit team that arbitrarily classified [her] to long-term (indefinite) special management before and after [she] was exonerated by the [Oklahoma General Investigator] of any wrongdoing" in relation to a PREA investigation into her conduct.[7] Dkt. No. 1 at 31. Plaintiff claims that Defendant Schulter, who was Plaintiff's case manager, initially agreed with Plaintiff that she should be reclassified after her exoneration, but that Plaintiff nonetheless was left "in the same cell, on the same unit, with the same restrictions as the previous classification." *Id.* at 13, 20, 31. Plaintiff asserts this classification affected her eligibility to receive a parole interview. *Id.* at 14-15.[8] Here, again, Plaintiff fails to provide sufficient facts regarding the personal participation of any defendant. She does not differentiate the respective conduct of Defendant Chumley, Schluter, Gardner, Mooney, or Battles in the classification process or provide facts suggesting these defendants were aware of her exoneration in the PREA investigation. Nor does Plaintiff provide facts from which the Court could reasonably infer that Defendant Schulter was responsible

[7] Elsewhere in the Complaint, Plaintiff contends only Defendants Chumley, Schluter, and Battles arbitrarily classified her to special management. *Compare* Dkt. No. 1 at 31, *with id.* at 27.

[8] It does not appear that Plaintiff is asserting a separate due process claim based on her denial of parole or the procedures regarding her eligibility to receive a parole interview. Such a claim, in any event, would fail, as Oklahoma has not established a parole system creating a liberty interest protected by the Constitution's guarantee to due process. *Clark v. Fallin*, 654 F. App'x 385, 388 (10th Cir. 2016) (citing *Boutwell v. Keating*, 399 F.3d 1203-1213-15 (10th Cir. 2005)).

for Plaintiff's continued placement in "special management" after Schulter agreed that Plaintiff should be reclassified. Without more, Plaintiff has failed to meet the plausibility standard on this claim.

**c. *Claims Relating to Denial of Transfer Requests***

Plaintiff contends that within a year and a half, her supermax unit team, comprised of Defendants Schluter, Mooney, Gardner, Chumley, and Robinson, provided four transfer packets to Defendants Farris, Gray, Gulbert, Sparks, Bryant, Bears, and Sharp regarding Plaintiff's potential transfer out of the supermax unit. Dkt. No. 1 at 16, 18-19, 29, 32, 34. Plaintiff contends Defendants Schluter, Mooney, Gardner, Chumley, and Robinson provided "false information" in the section of the transfer packets describing the reason for the transfer.[9] *Id.* at 16, 19, 32. Plaintiff, however, does not specify the content of the false information, how it resulted in the denial of the transfer packets, or what action each defendant took as opposed to collective allegations. *See Robbins*, 519 F.3d at 1250 (explaining that a § 1983 complaint must "make clear exactly *who* is alleged to have done *what* to whom," rather than provide "collective allegations"). Plaintiff's assertion that these defendants provided false information is conclusory and not entitled to the assumption of truth, and the allegations do not permit the Court to draw the reasonable inference of a violation of a constitutional right.

Plaintiff then contends that the denial of her transfer packets by Defendants Farris, Gray, Gulbert, Sparks, Bryant, Bears, and Sharp was arbitrary and violated her due process rights.[10] Dkt.

---

[9] In her request for relief regarding this claim, Plaintiff references only Defendants Schluter, Mooney, and Robinson. *Compare id.* at 19, *with id.* at 32.

[10] In her request for relief regarding this claim, Plaintiff references Defendants Farris, Gray, Gulbert, Sparks, Bryant, Bears, and Sharp. Here, again, the defendants listed in the request for relief differ somewhat from those referenced in the corresponding allegations. *Compare* Dkt. No. 1 at 33-35, *with id.* at 18, 29.

No. 1 at 33-35. This claim similarly fails, as Plaintiff again neglects to differentiate the defendants' conduct. *See Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2008) (To state a viable § 1983 claim, "it is incumbent upon a plaintiff to identify *specific* actions taken by *particular* defendants."). Moreover, even assuming Plaintiff's transfer packets contained false information, presumably regarding the PREA investigation into her conduct, Plaintiff provides no facts suggesting these Defendants were aware of the false information and denied the packets despite this knowledge or explaining how the defendants deviated from policy or rendered the process deficient. Thus, Plaintiff has not plausibly alleged that they violated her constitutional rights by denying her transfer packets. *See Hall*, 935 F.2d at 1110 ("[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted.").

**d. *Claims Relating to Reviewing Authority***

Plaintiff additionally seeks relief against Defendants Battles and Knutson "as the Reviewing Authority" with the "power and position to cure" the alleged wrongs and against Defendant Webb for not "look[ing] into the process" of her denied transfers. Dkt. No. 1 at 20-21, 23-24, 31-32. Plaintiff challenges Defendant Knutson and Defendant Webb's responses to her administrative grievances and contends their denial of grievances denied her "access to the court[s]." *Id.* at 20-21, 23-24, 32, 34. However, "a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983," *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009), and Plaintiff fails to explain how the denial of her grievances "prejudiced [her] in pursuing litigation," *Trujillo v. Williams*, 465 F.3d 1210, 1226 (10th Cir. 2006) (internal quotation marks omitted). *See Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011) (finding that a prison's refusal to

entertain a grievance does not compromise the prisoner's access to the courts).[11] Plaintiff then challenges Defendant Battles's alleged use of prison policies to "deny [her] removal from supermax" and deny her the property items she brought from her medium security facility. *Id.* at 21-22. Plaintiff's allegations against Defendant Battles are too conclusory to demonstrate his personal participation in a constitutional violation. Plaintiff again does not describe the prison policies or how Defendant Battles misapplied them in a manner that violated her constitutional rights.

## III. <u>Plaintiff's Allegations Implicating Conditions of Confinement</u>

Plaintiff alleges that, after her initial transfer she was not provided "hygiene, property, clothing, bedding, or chronic medication." Dkt. No. 1 at 11. She then claims that, while in the supermax unit, she endured "no human contact" and "no outdoor recreation." *Id.* at 14, 20. Plaintiff additionally makes the contradictory allegations that she had "light shining in [her] cell 24 hours a day," *id.* at 14, and was "underground [with] no windows," *id.* at 20. Plaintiff's allegations likely were meant to support the "atypical and significant hardship" component of her due process claims. Plaintiff does not expressly raise a claim of unconstitutional conditions of confinement in the body of her Complaint or seek relief for such a claim in her requests for relief. Though Plaintiff cites the Eighth Amendment in conjunction with her other claims, mere "labels and conclusions" will not suffice to state a plausible claim for relief, and the Court will not construct legal theories on Plaintiff's behalf. *Twombly*, 550 U.S. at 555.

Even if the Court were to assume that Plaintiff had asserted an Eighth Amendment claim based on the conditions of her confinement, she has failed to state a plausible claim for relief

[11] The Court cites unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

against any defendant. "An inmate making an Eighth Amendment claim for constitutionally inadequate conditions of confinement must allege and prove an objective component and subjective component associated with the deficiency" claimed. *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001). "The objective component requires conditions sufficiently serious so as to 'deprive inmates of the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347(1981)). "The subjective component requires that a . . . prison official have a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety." *Id.* Here, Plaintiff fails to plausibly allege the personal participation of any defendant in relation to such a claim. Nor can the Court reasonably infer from her allegations that any defendant acted with the requisite state of mind. Accordingly, even if a liberal construction of the Complaint could support the Court's consideration of a conditions-of-confinement claim, Plaintiff has failed to state a plausible claim for relief under this theory.

**IV. <u>Plaintiff's Supervisory Liability Claims</u>**

A defendant sued in his individual capacity under § 1983 "may be subject to personal liability and/or supervisory liability." *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011). Under either theory, individual liability "must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). A government official cannot be held liable under § 1983 on a theory of *respondeat superior*. *See Dodds v. Richardson*, 614 F.3d 1185, 1195-96 (10th Cir. 2010). Thus, it is "not enough" for a plaintiff "merely to show [the] defendant was in charge of other state actors who actually committed the violation." *Id.* at 1195 (internal quotation marks omitted). Rather, to establish supervisory liability, a plaintiff must demonstrate "an 'affirmative link' between the supervisor and the constitutional violation." *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (internal

quotation marks omitted).

The "affirmative link" requirement includes three elements: the supervisor's: "(1) personal involvement; (2) causation; and (3) state of mind." *Id.* Regarding the first element, a supervisor's personal involvement may be established by demonstrating his "personal participation, his exercise of control or direction, or his failure to supervise." *Dodds*, 614 F.3d at 1195 (internal quotation marks omitted). Personal involvement also may be established through the supervisor's "promulgation, creation, implementation, or utilization of a policy that caused a deprivation of plaintiff's rights" or the supervisor's "knowledge of the [constitutional] violation and acquiescence in its continuance." *Id.* (brackets and internal quotation marks omitted). To establish the second element, a plaintiff must show that "the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013) (internal quotation marks omitted). Finally, to establish the third element, the plaintiff must demonstrate the supervisor acted with "the same state of mind required for the constitutional deprivation he alleges." *Dodds*, 614 F.3d at 1204.

**a. *Claims against Defendant Harpe***

First, Plaintiff seeks relief against Defendant Harpe, as ODOC's "supervisory official," alleging Harpe "knew or should have known of [the alleged] arbitrary actions" of other defendants but "did not step in and curb or stop them." Dkt. No. 1 at 33. Plaintiff alleges Harpe "allow[s] policies to be used and exist that give the other defendants the power to violate [her] rights," and that Harpe "failed to train and supervise staff." *Id.* at 17. Plaintiff contends Harpe was "put on notice" of the alleged violations against Plaintiff by her submission of grievances and the submission of emails by a transgender advocacy community. *Id.* at 24. Plaintiff, however,

provides no details describing Harpe's alleged policies or Harpe's alleged failure to train or supervise. Rather, Plaintiff's allegations of Harpe's personal involvement are wholly conclusory, and Plaintiff therefore has not plausibly alleged the first element of a supervisory liability claim. Nor has Plaintiff provided any allegations from which the Court could infer that Harpe's actions caused Plaintiff's alleged injuries or that Harpe possessed the requisite states of mind. Plaintiff's assertion that Harpe "knew or should have known" of the actions of other defendants does not serve to satisfy the state-of-mind requirement. *See Estate of Booker*, 745 F.3d at 435 (explaining that an affirmative link requires "more than a supervisor's mere knowledge of his subordinate's conduct" (internal quotation marks omitted)). Accordingly, Plaintiff has not stated a plausible claim for relief against Defendant Harpe.

**b. *Claims against Defendant Quick***

Second, Plaintiff seeks relief against OSP Warden Quick. Plaintiff alleges that a doctor determined that she needed to be "handcuff[ed] forward" and provided an order to that effect. Dkt. No. 1 at 36. Plaintiff first alleges this order was "based on [her] physical health" but later alleges it was meant to prevent or deter sexual assaults by prison guards. *Id.* at 36, 38. Plaintiff contends that the order required Defendant Quick's signature for authorization, but that Defendant Quick denied it. Plaintiff also contends that Defendant Quick's failure "to train and supervise" prison guards resulted in sexual assaults by prison guards. *Id.* at 37-38. Plaintiff asserts Defendant Quick's actions were retaliatory in that they were "directly related to [Plaintiff's] filing of multiple grievances and complaints about [her] placement on the supermax unit." *Id.*

Insofar as Plaintiff is seeking to bring Eighth Amendment claims against Defendant Quick, based either on personal liability or supervisory liability, Plaintiff's claims fail. Prison officials violate the Eighth Amendment only when two requirements are met. "First, the deprivation

alleged must be, objectively, 'sufficiently serious,'" meaning the "prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (citations omitted). For a claim "based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* Deprivations resulting from sexual assaults by prison guards satisfy this objective component of an Eighth Amendment claim. *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998). If, however, the deprivation is medical in nature, the medical need is sufficiently serious to implicate the Eighth Amendment if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). Second, a prison official is liable under the Eighth Amendment only if the official is deliberately indifferent to the inmate's health or safety, meaning the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "It is not enough to establish that the official should have known of the risk of harm." *Barney*, 143 F.3d at 1310.

Insofar as Plaintiff predicates an Eighth Amendment claim on Defendant Quick's refusal to permit her to wear her handcuffs in front of her, Plaintiff fails to plausibly allege a sufficiently serious medical need, and while sexual assaults are sufficiently serious, Plaintiff fails to provide facts suggesting Defendant Quick's refusal did in fact result in sexual assaults. Plaintiff also fails to plausibly allege that, in denying the handcuff order, Defendant Quick was deliberately indifferent to Plaintiff's health or safety. Plaintiff states that Defendant Quick "had years of prior notice of the touching of [her] body by staff, and [her] medical issues," but this statement is

conclusory, as Plaintiff provides no supporting facts, and it fails to show that Defendant Quick was aware of facts connecting Plaintiff's prior assaults or medical issues to her handcuff placement. Dkt. No. 1 at 38. Accordingly, Plaintiff has failed to allege that Defendant Quick violated her Eighth Amendment rights by refusing to sign the handcuff order.

Insofar as Plaintiff asserts that Defendant Quick's failure to train or supervise prison staff resulted in sexual assaults, Plaintiff has failed to plausibly allege that Defendant Quick acted with the requisite state of mind or provide any non-conclusory allegations regarding training or supervision. Nor does Plaintiff provide facts from which the inference could be drawn that deficiencies in Defendant Quick's training or supervision of prison staff caused the alleged sexual assaults. Thus, Plaintiff has failed to state a plausible Eighth Amendment claim against Defendant Quick in relation to the alleged sexual assaults.

Finally, Plaintiff's conclusory allegation that Defendant Quick acted in retaliation due to Plaintiff's filing of grievances fails, as Plaintiff provides no facts from which a reasonable inference could be drawn that Defendant Quick intentionally failed to prevent or deter sexual assaults or that such failure was "substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero*, 510 F.3d at 1203.

## V. <u>Plaintiff's Official-Capacity Claims and Claims against ODOC</u>

Defendants contend that the claims against ODOC and any official-capacity claims for damages against Defendants in their official capacities are barred by the Eleventh Amendment, and that the "Defendants in their official capacity are not . . . 'person[s]' under § 1983." Dkt. No. 59 at 20-21. "The Eleventh Amendment generally bars suits against a state in federal court commenced by citizens of that state or citizens of another state." *Good v. Dep't of Educ.*, 121 F.4th 772, 788 (10th Cir. 2024) (emphasis and internal quotation marks omitted); *see* U.S. Const.

amend. XI; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 65 (1996). The bar "applies regardless of whether a plaintiff seeks declaratory or injunctive relief, or money damages." *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007). Eleventh Amendment immunity encompasses not just suits against the State itself but also suits against "governmental entities that are 'arms of the state.'" *Good*, 121 F.4th at 789. "The ODOC is . . . shielded by sovereign immunity because it is an arm of the state." *Berry v. Oklahoma*, 495 F. App'x 920, 922 (10th Cir. 2021) (citing *Eastwood v. Dep't of Corr. of Okla.*, 846 F.2d 627, 631-32 (10th Cir. 1988)). Thus, Plaintiff's claims against ODOC are barred by the Eleventh Amendment.

Further, "[i]f an agency is an arm of the state, its sovereign immunity from actions for damages extends to its officials sued in their official capacities." *K.A. v. Barnes*, 134 F.4th 1067, 1074 (10th Cir. 2025). Because the four Defendants against whom Plaintiff raised official-capacity claims—Defendants Steven Harpe, Nanci Battles, Dana Webb, and Christie Quick—were employed by ODOC during the events giving rise to this suit, ODOC's immunity extends to Plaintiff's § 1983 claims for damages against them in their official capacities. Dkt. No. 1, at 1, 10, 36; *see Sellers v. Cline*, 651 F. App'x 804, 805 (10th Cir. 2016) (affirming dismissal of official-capacity claims for damages against state prison warden as barred by Eleventh Amendment); *Hobbs v. Okla. State Penitentiary*, 673 F. App'x 837, 839 (10th Cir. 2016) (affirming dismissal of official-capacity claims for damages against OSP law library supervisor and law library legal clerk as barred by Eleventh Amendment).[12] And while the *Ex parte Young* exception to Eleventh Amendment immunity permits "suit[s] against individual state officers acting in their official

[12] Additionally, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," when sued for money damages. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 & n.10. Thus, Plaintiff's § 1983 claims for monetary relief against Defendants in their official capacities are subject to dismissal on that ground.

capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief," this exception does not apply to Plaintiff's official-capacity claims because Plaintiff seeks only monetary relief. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012).

For these reasons, the Court dismisses the claims against ODOC and the official-capacity claims against Defendants Harpe, Battles, Webb, and Quick as barred by the Eleventh Amendment.

## VI. Plaintiff's State Law Claims

At various points in her Complaint, Plaintiff contends Defendants violated "state laws of negligence and retaliation" and caused her emotional distress. Because the Court finds Plaintiff's federal claims should be dismissed and the parties appear to be citizens of Oklahoma, the Court lacks original jurisdiction over the non-federal claims. Accordingly, any supplemental jurisdiction the Court may exercise over state-law claims is discretionary. The Court declines to exercise supplemental jurisdiction over any state law claim asserted in the Complaint. 28 U.S.C. § 1367(c)(3).

## VII. Claims against Non-Moving Defendants

As articulated above, the Court finds that the claims against the non-moving defendants, Defendants Quick, Gulbert, and White, should be dismissed. Specifically, the Court finds the official-capacity claim against Defendant Quick is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B)(iii) based on immunity, and the individual-capacity claims raised against Defendants Quick, Gulbert, and White are subject to dismissal under § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted. Typically, when a Court dismisses a claim under § 1915(e)(2)(B)(ii), the Court should allow the plaintiff an opportunity to amend unless it is clear amendment would be futile. *See Curley v. Perry*, 246 F.3d 1278, 1281-84 (10th Cir. 2001); *Hall*,

935 F.2d at 1110. It appears amendment may be futile as to all claims against Defendant White and any claims against Defendants Quick and Gulbert arising prior to September 16, 2022, as those claims may be barred by the statute of limitations.[13] *See* Dkt. No. 59, at 16-17 (arguing that all claims arising prior to September 18, 2022, are barred by the two-year statute of limitations). However, the Court will permit Plaintiff an opportunity to address this issue and to demonstrate that amendment of her individual-capacity claims against these three defendants "would yield a meritorious claim." *Curley*, 246 F.3d at 1284.

Accordingly, if Plaintiff wishes to pursue her claims against Defendants Quick, Gulbert, and White, she shall, within twenty-one (21) days of this Order, file a motion to amend her complaint pursuant to Local Civil Rule 9.2(c), and attach a proposed amended pleading containing only her revised individual-capacity claims against these three defendants. *See Requena v. Roberts*, 893 F.3d 1195, 1206 (10th Cir. 2018). If Plaintiff includes in her proposed amended complaint any claim arising prior to September 16, 2022, Plaintiff should address in her motion whether amendment would be futile as to the claim(s) due to the statute of limitations. The motion should be brief, in no event exceeding five (5) pages. The proposed amended complaint attached to the motion likewise should be concise, containing only a "short and plain" statement of the claims for relief, and must be on the Court's approved Pro Se Prisoner Civil Rights Complaint form. Fed. R. Civ. P. 8(a); LCvR 9.2(a). Plaintiff's failure to comply with these directives will result in the denial of the motion. If Plaintiff chooses not to submit a motion to amend her complaint, the Court shall enter judgment in this matter upon the expiration of the 21 days.

---

[13] Plaintiff declared under penalty of perjury that she placed the Complaint in her prison's legal mail system on September 16, 2024. Dkt. No. 1 at 8. Section 1983 claims arising in Oklahoma are "subject to a two-year statute of limitations." *Stevenson v. Grace*, 356 F. App'x 97, 98 (10th Cir. 2009).

The Court additionally notes that Defendants Quick, Gulbert, and White have not been served. It appears a summons was not issued for Defendant Quick, and the summonses issued for Defendants Gulbert and White were returned unexecuted. Dkt. Nos. 43, 45. Plaintiff has filed a Motion requesting that the Court "order" these defendants to accept service and a subsequent motion requesting a second attempt to serve them. Dkt. Nos. 61, 67. The former request is not proper under Rule 4 of the Federal Rules of Civil Procedure and shall be denied. The latter request shall be denied without prejudice. If Plaintiff submits a motion to amend her pleading and the Court grants the motion, the Court will address the issue of service of process at that time.

**CONCLUSION**

For the reasons discussed herein, the Court concludes that Plaintiff has failed to state a plausible claim for relief against any Defendant.

ACCORDINGLY, IT IS HEREBY ORDERED that:

1. Plaintiff's "Declaration of Disputed Facts" [Dkt. No. 62] and "Motion and Stat[e]ment of Disputed Facts" [Dkt. No. 63] are construed as Responses to Plaintiff's Motion to Dismiss. Insofar as the "Motion and Stat[e]ment of Disputed Facts" is styled as a motion, the motion is DENIED.
2. Plaintiff's "Motion Requesting This Court to Allow Plaintiff to Add Sworn Affidavit to Complaint" [Dkt. No. 79] is DENIED.
3. Plaintiff's "Motion to Request Defendants Quick, Gulbert, White, and Farris Stop Refusing to Accept Service" [Dkt. No. 61] is DENIED.
4. Plaintiff's "Motion to Compel This Court to Send United States Marshall Forms" [Dkt. No. 67] is DENIED without prejudice.
5. Defendants' Motion to Dismiss [Dkt. No. 59], brought pursuant to Rule 12(b), is

GRANTED. Plaintiff's claims against Defendants ODOC, Steven Harpe, Elizabeth Schluter, Carl Bear, Amber Robinson, Justin Farris, Tommy Sharp, Jason Bryant, Mark Knutson, Petra Chumley, Travis Gray, Sherri Mooney, Susan Gardner, Nanci Battles, and Dana Webb are DISMISSED without prejudice.

6. Plaintiff's official-capacity claim against Defendant Quick is DISMISSED without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).
7. Plaintiff's individual-capacity claims against Defendants Quick, Gulbert, and White are DISMISSED without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).
8. Plaintiff's remaining motions [Dkt. Nos. 4, 60, 64, 69, 70] are DENIED as moot.[14]
9. Plaintiff may file a motion to amend her complaint as to the individual-capacity claims against Defendants Quick, Gulbert, and White within twenty-one (21) days of this Order.

Dated this 18th day of August 2026.

JOHN F. HEIL, III
CHIEF UNITED STATES DISTRICT JUDGE

[14] If Plaintiff seeks leave to amend her complaint as set forth herein, and the Court grants the motion, Plaintiff may reassert pertinent motions, if appropriate.